IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**UNITED STATES OF AMERICA**                                                                 **PLAINTIFF**

**V.**                           **CASE NO. 5:13-CR-50012-004**

**GONZALO PONCE-HURTADO**                                                              **DEFENDANT**

## OPINION AND ORDER

Before the Court is Defendant Gonzalo Ponce-Hurtado's Motion for Compassionate Release and to Appoint Counsel (Doc. 199). The Government filed a response (Doc. 203), and the Court finds that the matter is ripe for consideration. For the reasons set forth below, the Court **DENIES** the Motion (Doc. 199).

### I. BACKGROUND

On May 29, 2013, Mr. Ponce-Hurtado pleaded guilty to count one of the superseding indictment charging him with conspiracy to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846. On March 18, 2014, the Court sentenced Mr. Ponce-Hurtado to a 210-month term of imprisonment, three years of supervised release, a $15,000 fine, and a $100 special assessment. *See* Doc. 117. Pursuant to a retroactive change to the United States Sentencing Guidelines ("U.S.S.G."), the Court subsequently reduced Mr. Ponce-Hurtado's sentence from 210 months to 168 months. *See* Doc. 161. Based upon his amended sentencing and any associated good-time credits, the Bureau of Prisons ("BOP") projects that Mr. Ponce-Hurtado's release date is February 1, 2025. *See* Fed. Bureau of Prisons, Find An Inmate, https://www.bop.gov/inmateloc/ (last accessed Jan. 14, 2021).

Mr. Ponce-Hurtado then filed the instant *pro se* Motion seeking a reduction of his sentence to one of time served pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and the First Step

Act of 2018 (the "FSA"). Mr. Ponce-Hurtado is a 66-year-old man who alleges that he has the following health conditions: chest pain, type-2 diabetes, gastro esophageal disease, "health care maintenance," hyperlipidemia, lumbar pain with radiation down left leg, neck pain, numbness of extremity, rashes, hypertension, malignant neoplasm of prostate, lumbar hernia repair, and high cholesterol. *See* Doc. 199, pp. 2–3. He argues that he is exceptionally vulnerable to COVID-19 and that this vulnerability constitutes an "extraordinary and compelling reason" justifying his early release. *Id.* at p. 2.

## II. LEGAL STANDARD

The FSA permits an inmate to seek a sentence reduction directly from the sentencing court "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A)(i). If one of these threshold requirements is satisfied, the court may grant a defendant's motion for a reduction in sentence "after considering factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). Thus, the Court looks to the Sentencing Commission's policy statement in the Guidelines as a starting point in determining what constitutes "extraordinary and compelling reasons" under § 3582(c)(1)(A)(i).

Application Note 1(A)(ii)(I) of U.S.S.G. § 1B1.13 indicates that the medical condition of the defendant may provide extraordinary and compelling reasons if the

2

defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." Although the Sentencing Commission has not updated nor adopted a new policy statement since the FSA was enacted, the policy statement nonetheless provides guidance as to what constitutes extraordinary and compelling reasons for the purposes of 18 U.S.C. § 3582(c)(1)(A). *See, e.g., United States v. Schmitt*, 2020 WL 96904, at *3 (N.D. Iowa Jan. 8, 2020).

### III. DISCUSSION

#### A. Exhaustion of Remedies

The Court's ability to rule on Mr. Ponce-Hurtado's Motions is dependent on whether he: (1) fully exhausted his administrative right to appeal the BOP's failure to bring a motion for early release or (2) allowed 30 days to lapse since the warden received his request for early release, whichever event is sooner. 18 U.S.C. § 3582(c)(1)(A)(i). Mr. Ponce-Hurtado presents proof that he requested early release in September 2020, and the Government concedes that he has exhausted his administrative remedies. Since Mr. Ponce-Hurtado petitioned his warden for early release in September 2020 and more than 30 days have lapsed since then, the Court finds that Mr. Ponce-Hurtado has satisfied the exhaustion requirement set forth at 18 U.S.C. § 3582(c)(1)(A)(i).

#### B. Section 3553(a) Factors

The Government does not contest that Mr. Ponce-Hurtado's medical conditions could substantially diminish his ability to provide self-care within the environment of a correctional facility if he were to contract COVID-19. *See* Doc. 203, p. 7. The Court

3

agrees, but concludes that Mr. Ponce-Hurtado is not a suitable candidate for early release considering the Section 3553(a) factors.

Section 3582(c)(1) requires the court to consider the factors set forth in 18 U.S.C. § 3553(a) before granting a motion for compassionate release. According to the PSR,[1] Mr. Ponce-Hurtado was engaged in a methamphetamine trafficking organization that involved at least four other individuals. Mr. Ponce-Hurtado's offense conduct included trying to recruit an individual to transport approximately 4 kilograms of a mixture containing methamphetamine from Pennsylvania to Arkansas. (Doc. 98, p. 11). Furthermore, Mr. Ponce-Hurtado was not a minor participant in this organization: The PSR indicates that he was referred to as "boss" by at least one other coconspirator, and he received the four-level leader/organizer enhancement under U.S.S.G. § 3B1.1(a). The PSR also includes information that Mr. Ponce-Hurtado participated in methamphetamine transactions with an individual in Oklahoma that involved approximately a dozen pounds of methamphetamine, though the Court did not include these quantities in the calculation of Mr. Ponce-Hurtado's Guideline range. *Id.* at p. 10. The Court ultimately held Mr. Ponce-Hurtado responsible for 5.49 kilograms of a mixture containing methamphetamine, which at the time corresponded to a base offense level of 36. *Id.* at p. 11. After receiving the four-point leader/organizer enhancement and a three-point reduction for acceptance of responsibility, for a total offense level of 37, and in conjunction with his criminal history category of I and a 20-year statutory maximum, Mr. Ponce-Hurtado's Guideline range

---

[1] At sentencing, the Court adopted the PSR without any changes. *See* Doc. 118, p. 1.

4

was 210 to 240 months. Thus, Mr. Ponce-Hurtado's sentence was at the bottom of his Guideline range.[2]

By the Court's calculation, it appears that Mr. Ponce-Hurtado has served approximately 95 months—or 56%—of his 168-month sentence. In the Court's view, this amount of time is insufficient to reflect the seriousness of his offense conduct, to promote respect for the law, and to afford adequate deterrence to those who would seek to engage in similar drug trafficking activities. Mr. Ponce-Hurtado's conduct was extremely serious: He was the leader of an interstate methamphetamine trafficking organization that moved large quantities of methamphetamine throughout the United States. Moreover, he has already benefited from a 42-month reduction in his sentence, and he arguably received a concession when the Court did not hold him responsible for the pounds of methamphetamine he allegedly trafficked with the aid of the individual in Oklahoma. Indeed, allowing Mr. Ponce-Hurtado to complete his 168-month sentence in 95 months would create a significant disparity with his co-conspirators and other defendants who have been held responsible for similar offenses. In sum, after considering and weighing all of the Section 3553(a) factors, the Court continues to find that Mr. Ponce-Hurtado's sentence of 168 months is just and fair under the totality of the circumstances.

For these reasons, even assuming Mr. Ponce-Hurtado has demonstrated extraordinary and compelling medical reasons justifying a reduction of his sentence, the

---

[2] The Sentencing Commission later retroactively amended the Guidelines in a manner that reduced Mr. Ponce-Hurtado's base offense level to a 34, which resulted in a two-point reduction of his total offense level to 35. Thus, his adjusted Guideline range became 168 to 210 months, and his sentence was reduced to the bottom of the recalculated range. See Doc. 160.

Court finds that the Section 3553(a) factors do not justify compassionate release of Mr. Ponce-Hurtado.[3]

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant Gonzalo Ponce-Hurtado's Motion for Compassionate Release and to Appoint Counsel (Doc. 199) is **DENIED**.

**IT IS SO ORDERED** on this 22nd day of January, 2021.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

---

[3] To the extent Mr. Ponce-Hurtado asks to serve the remainder of his sentence in home confinement, the FSA gives only the BOP—not the Court—the power to decide where Mr. Ponce-Hurtado serves his sentence. *See* 18 U.S.C. §§ 3624(c)(4), 3621(b).